<div style="color:red; text-align:center; font-size:2em;">**SEALED**</div>

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 23MJ828 |
|---|---|
| Plaintiff, | COMPLAINT FOR VIOLATION OF: |
| V. | 21 U.S.C. § 841(a)(1) – Distribution of Methamphetamine |
| ANTHONY MONTOYA, aka "D-LOC", | |
| Defendant. | |

The undersigned complainant being duly sworn states:

## COUNT ONE

On or about May 11, 2021, within the Southern District of California, defendant ANTHONY MONTOYA, *aka "D-LOC"*, did knowingly and intentionally distribute 50 grams and more of methamphetamine (actual), to wit: approximately 1,735 grams of a methamphetamine (actual), a Schedule II Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1).

//
//
//

The complainant further states that this complaint is based on the attached Probable Cause Statement incorporated herein by reference.

*Kayla Hewitt*
Kayla Hewitt
Special Agent, FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 8th day of March, 2023.

*Mitchell D. Dembin*
HON. MITCHELL D. DEMBIN
United States Magistrate Judge

## PROBABLE CAUSE STATEMENT

I declare under the penalty of perjury that the following statement is true and correct:

On May 10, 2021, a Confidential Human Source (CHS)[1] was in contact with ANTHONY MONTOYA, *aka "D-LOC"*, via Snapchat, a social media application. MONTOYA asked CHS if CHS wanted to meet for dinner at 7:30 p.m. At the direction of law enforcement, CHS contacted MONTOYA via Snapchat to accept the dinner invitation. At approximately 8:12 p.m., CHS met with law enforcement and was equipped with audio/video recording devices to capture the conversation with MONTOYA.

At approximately 8:23 p.m., CHS met with MONTOYA, and three other people to have dinner. After dinner, at approximately 10:23 p.m., MONTOYA and CHS entered CHS's vehicle. CHS asked MONTOYA to get multiple pounds of methamphetamine for a friend that makes trips into Tijuana, Mexico. After discussing money and logistics, MONTOYA stated he would make a call when he got home to see who could provide multiple pounds of methamphetamine and what their price would be.

On May 11, 2021, at approximately 2:00 p.m., at the direction of law enforcement, CHS placed a consensually recorded call to MONTOYA via Snapchat. During the conversation, CHS told MONTOYA that he had money and to tell "him" [MONTOYA's source of drug supply][2] that CHS will pay the asking price for the "shoes" [code for

---

[1] CHS has a criminal history that includes convictions for: Felon in Possession of a Firearm (2018), Driving under the Influence (2017), and Felony Evading (2009). CHS had been cooperating with law enforcement for consideration of a lesser sentence in connection with a 2019 federal case in which the CHS had pled guilty for conspiracy to distribute methamphetamine. CHS was sentenced after the events in this affidavit. CHS was not paid for services and expenses in this investigation. Investigators have corroborated information provided by CHS through physical surveillance and recorded communications during controlled purchases and investigation into individuals identified by CHS as involved in the distribution of drugs and firearms. Through this corroboration, investigators believe that CHS was credible and his/her information was reliable.

[2] Phrases in brackets are intended to interpret code words and phrases. Those interpretations are based on my training and experience, oral communications with other law enforcement officers, and review of written reports by other law enforcement officers.

methamphetamine]. CHS stated that CHS will pay asking price for two [pounds of meth] and asked if they (referring to MONTOYA's source of drug supply) can "front" [provide the drugs prior to payment with the expectation that the drugs will be paid for later] three additional pounds. CHS told MONTOYA that in two days, CHS would have the money for the other three pounds.

At approximately 2:27 p.m., MONTOYA called CHS and stated CHS could get four pounds total. MONTOYA stated CHS would have to purchase two pounds for $1,150.00 each, and an additional two pounds would be fronted to CHS.

At approximately 6:15 p.m., CHS met with law enforcement, and was provided with $2,300.00 in government funds and equipped with audio/video recording devices to capture the transaction with MONTOYA. Law enforcement searched CHS and did not find contraband. At the direction of law enforcement, CHS drove to MONTOYA's residence, arriving at approximately 6:33 p.m. Law enforcement surveillance units observed CHS meet with MONTOYA, walk towards the residence together and then walk back towards CHS's vehicle.

At approximately 6:41 p.m., law enforcement surveillance units observed CHS's vehicle and MONTOYA's BMW, bearing license plate 8LDD827, drive away from MONTOYA's residence in tandem.

At approximately 7:00 p.m., the helicopter surveillance unit observed MONTOYA's BMW and CHS's vehicle arrive and park at the intersection of N 1st Street and Persimmon Avenue in El Cajon, California. MONTOYA got out of the BMW and met with CHS. MONTOYA stood at the driver's side window of CHS's vehicle for about 30 seconds before MONTOYA got back inside the BMW. MONTOYA drove down the street and parked in the driveway of 1136 Persimmon Avenue, El Cajon, California.

At approximately 7:04 p.m., the helicopter surveillance unit observed MONTOYA get out of the BMW and walk in the front door of 1136 Persimmon Avenue, El Cajon, California. At approximately 7:17 p.m., MONTOYA walked out of the house with an

4

unknown male. MONTOYA and the unknown male stood in front of the residence for a few minutes.

At approximately 7:19 p.m., the helicopter surveillance unit observed MONTOYA, carrying an unknown object in his hand, get back inside the BMW and drive back down the street to CHS's vehicle. MONTOYA parked next to CHS's vehicle, got out of the BMW, and carried the object to CHS's car. MONTOYA leaned inside the front passenger window for a few minutes and then got inside CHS's vehicle. At approximately 7:25 p.m., MONTOYA exited CHS's vehicle, entered his BMW and drove away. The transaction took place in the Southern District of California.

Immediately following the transaction between CHS and MONTOYA, CHS met with law enforcement where he was searched. CHS turned over the audio/video recording devices and a Target plastic bag containing four plastic bags with a white crystalline substance. CHS stated that, upon arrival at N 1st Street and Persimmon Avenue, CHS gave MONTOYA the money [$2,300.00 of government funds]. MONTOYA left for a few minutes, and upon his return got back into CHS's vehicle. CHS stated MONTOYA then gave CHS the Target shopping bag.

The Drug Enforcement Administration laboratory later determined that the white crystalline substance was 1,735 grams of actual methamphetamine.

//
//
//
//
//
//
//
//
//
//w

## REQUEST FOR SEALING

It is further respectfully requested that this Court issue an Order sealing, until further order of this Court, all papers submitted in support of this complaint, including the probable cause statement and arrest warrant. Sealing is necessary because premature disclosure of the contents of this probable cause statement and related documents may result in the destruction of evidence or otherwise have a negative impact on this continuing investigation.

_____
Kayla Hewitt
Special Agent, FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 8th day of March, 2023, I find probable cause to believe that the defendant named in this probable cause statement committed the offense on May 11, 2021, in violation of 21 U.S.C. § 841(a)(1).

_____
HON. MITCHELL D. DEMBIN
United States Magistrate Judge